ADAMSON *v.* TURNER, *et al.*, commissioners.

No. 13595. APRIL 17, 1941.

56

*W. E. Armistead,* for plaintiff.

*H. A. Allen, O. J. Coogler,* and *O. J. Coogler Jr.,* for defendants.

ATKINSON, Presiding Justice. It is provided in section 10 of the act approved July 1, 1910 (Ga. L. 1910, p. 256), creating the Board of Commissioners of Roads and Revenues for Clayton County, that such board shall have exclusive jurisdiction "in settling all claims and accounts of officers having the care, management, or disbursement of funds belonging to or appropriated for the use and benefit of said county, and in bringing them to settlement; . . and generally to have and to exercise all the powers heretofore vested in the ordinary of said county when sitting for county purposes, and to exercise such other powers as are granted

by law or as may be indispensable to their jurisdiction over county matters or county finances." The act of 1915 (Ga. L. 1915, p. 183), purporting to repeal the above, did not become effective, because of failure of ratification as therein provided. So the act of 1910 remained of force, and was amended by the act of February 7, 1938 (Ga. L. Ex. Sess. 1937-1938, p. 786), in manner not material to be stated. By the general law, "The ordinary, when sitting for county purposes, has original and exclusive jurisdiction over the following subject-matters . . 6. In examining, settling, and allowing all claims against the county. 7. In examining and auditing the accounts of all officers having the care, management, keeping, collection, or disbursement of money belonging to the county or appropriated for its use and benefit, and bringing them to a settlement." Code, § 23-701. The general law also provides: "The ordinaries or other county authorities in charge of county affairs may compel all persons, their heirs, executors, or administrators, who have in their hands any county money, collected for any county purpose whatever, to pay over the same." § 92-3808. Also: "On failure to pay the same, the ordinaries or other county authorities in charge of county affairs shall issue executions against such persons and their securities, if any, for the full amount appearing to be due, as the Comptroller General issues executions against defaulting tax collectors." § 92-3809. "If such execution shall issue for too much, or if defendant shall deny on oath owing any part thereof, he may, by filing an affidavit of illegality, according to the rules governing other illegalities, cause an issue to be formed thereon, which shall be tried by a jury at the first term of the superior court thereafter." § 92-3810.

On the basis of the foregoing general laws and a substantially similar local law, it was held in *Greer* v. *Turner County*, 138 *Ga.* 558 (75 S. E. 578): "The chairman of the board of roads and revenues of Turner County has authority to issue an execution against any person holding county funds collected by the county for any purpose. . . It is not essential to the validity of such an execution that it be set out therein from whom the defendant in fi. fa. received the money, what particular money it was, or how it was county money. . . The execution may be issued against any person, whether an official or not, holding county money, and without suit or notice of any kind." Similarly it was later held

58

in *United States Fidelity & Guaranty Co.* v. *Toombs County,* 187 *Ga.* 544 (1 S. E. 2d, 411), that "the official or officials exercising control over the fiscal affairs of a county had the power to issue without notice an execution against the sheriff and his surety for money collected and unaccounted for." The quoted provisions of the local act of 1910, supra, creating the Board of Commissioners of Roads and Revenues for Clayton County, are to be considered in connection with the above-quoted provisions of the general law, as a composite whole. When so considered and applied, the Board of Commissioners of Roads and Revenues for Clayton County had jurisdiction to issue execution against Adamson for money of the county coming into his hands as sheriff and due the county, at the specially called session. In *McDuffie* v. *Wilcox County,* 165 *Ga.* 164 (4) (140 S. E. 379), it was held: "The law presumes, when a fi. fa. is issued against a county tax-collector, that the amount named therein is due by the officer, and the burden is on the tax-collector to show that the fi. fa. is invalid or inoperative in whole or in part. *Bridges* v. *Dooly County,* 83 *Ga.* 275 (9 S. E. 1085); *Mason* v. *Commissioners,* 104 *Ga.* 35, 50 (30 S. E. 513). The fact that the term of such officer has expired and that at the time the fi. fa. was issued he was a private citizen does not alter the case." After that decision came the act approved March 16, 1933, as in the Code, § 89-824. After that act of 1933 it was held in *United States Fidelity & Guaranty Co.* v. *Toombs County,* supra: "The clause in the Code, § 89-824, to the effect that 'On the trial of the case, whether in equity or on affidavit of illegality, the burden of proof shall be on the official or authority issuing the execution,' read in connection with another clause in the same section, to wit, 'and such execution shall be prima facie evidence of the facts, including the amount of loss sustained, therein recited,' does not in substance change the rule. When the fi. fa. is introduced in evidence, as was done in this case, the burden of proof is shifted."

That case was regularly tried by the jury, and the exception was to refusal of a motion for a new trial. The shifting of the burden of proof mentioned in the decision by the Supreme Court was accomplished by the plaintiff's introduction of the execution in evidence. The same result is accomplished in the instant case, where the plaintiff alleged existence and substance of the execution, and the judge on the basis of the allegations of the petition

refused a restraining order. The petition is to be construed most strongly against the plaintiff. The execution shows a definite amount due by plaintiff for money of the county, collected by plaintiff as sheriff and unaccounted for. Other allegations of the petition fail to show that the money had been accounted for. The paragraphs 8A, 9, and 10, set forth in the statement of facts, show relation one to the other. They amount to an indefinite attempt to explain that the amount shown by the execution is not due. The explanation revolves around the proposition that by custom, and private contracts, the plaintiff had waived collection of fees, commissions, and other indebtedness owed to him by the county, more than the amount of the execution, by reason whereof plaintiff had discharged his debt to the county. Plaintiff's relation to the county was fiduciary, and it was his duty under the law to pay the money over to the county as it was collected. There is no law authorizing any such practice, or any agreement or custom, to barter moneys collected for the county for waiver of fees or other individual demands against the county. Any such arrangement would be void as against public policy. In this connection see *Lamb* v. *Dart,* 108 *Ga.* 602, 611 (34 S. E. 160). The allegations of the petition failed to sustain the burden of disproving the amount due as disclosed by the execution; and consequently the judge did not err in refusing to grant a temporary restraining order. *Judgment affirmed. All the Justices concur.*