27028. TROUP COUNTY ELECTRIC MEMBERSHIP CORPORATION v. GEORGIA POWER COMPANY.

HAWES, Justice. Georgia Power Company filed a complaint for an injunction against Troup County Electric Membership Corporation in the Superior Court of Troup County.

When the case came on to be heard, the trial court, after hearing evidence and argument of counsel, enjoined the defendant "from further extending their lines or giving services more than 300 feet from the location of their lines on January 1, 1971." Thereafter, it being made to appear to the trial court that the defendant, prior to the rendition of the judgment above referred to, had extended its distribution lines located in a described residential subdivision in Muscogee County more than the 300 feet from their location on January 1, 1971, the court modified its order by permitting the defendant to continue to serve lots in the subdivision until the final determination of the issues by the Supreme Court, it being agreed and stipulated that nothing in such order as amended would operate to render the questions presented by the case moot.

The defendant Troup Electric Membership Corporation is a nonprofit electric membership corporation, organized under the provisions of the Act approved March 30, 1937 (Ga. L. 1937, pp. 644, 659), as amended. *Code Ann. Ch.* 34B-1. That Act authorizes electric membership corporations to be organized thereunder for the purpose of "engaging in rural electrification by [among others] . . . (1) the furnishing of electric energy to persons in rural areas . . ." Section 2 (8) of that Act, as amended, provides: " 'Rural area' means any area not included within the boundaries of any incorporated or unincorporated city, town, or village having a population in excess of 1,500 inhabitants at the time a corporation commences to operate electric facilities or to furnish electric energy in such an area, and includes both the farm and nonfarm population thereof; and the inclusion by annexation or otherwise, of any portion of a rural area, as defined in this Chapter, within the limits of an incorporated or unincorporated city, town, or village regardless of its population, shall not in any respect impair or affect the right of a corporation to continue to furnish electric energy to its member consumers or to new member con-

sumers within such newly annexed area: Provided that the right to serve new member consumers shall be limited to a service drop not exceeding 300 feet from any lines of such corporation in existence at the time of annexation or inclusion of any portion of rural area, as defined in this Chapter, within limits of an incorporated or unincorporated city, town or village." *Code Ann.* § 34B-102 (8). Prior to January 1, 1971, defendant owned distribution lines serving its members in portions of Muscogee County, Georgia, outside the limits of the then City of Columbus.

In 1968, the legislature proposed a local constitutional amendment to authorize the General Assembly to provide by local Act for the creation of a charter commission to study all matters relating to the consolidation of the government of the City of Columbus and the County of Muscogee and for the establishment of a successor government with powers and jurisdiction throughout the territorial limits of Muscogee County. Ga. L. 1968, p. 1508, et seq. That proposed constitutional amendment was duly ratified by a majority of the people residing in the City of Columbus and in Muscogee County outside the City of Columbus. Ga. L. 1969, p. 4426. At the 1969 session of the General Assembly a local enabling Act was passed creating the Muscogee County Charter Commission. Ga. L. 1969, p. 3571, et seq. Pursuant thereto, a charter commission was duly formed and drafted a charter which was ratified by the affirmative vote of a majority of the qualified voters of Muscogee County and by the affirmative vote of a majority of the qualified voters of the then existing City of Columbus at a referendum held on May 27, 1970. Thereafter, on November 3, 1970, an election was held to elect members of the governing authority of the county-wide government thereby established. "Upon the election of the members of said countywide government authority and their taking office as the governing authority of said county-wide government, the existing governments of the City of Columbus and Muscogee

County" stood abolished. Ga. L. 1969, pp. 3571, 3579. Said charter became effective January 1, 1971.

On that date a residential subdivision located outside the limits of what had been the City of Columbus, but within Muscogee County, was in the process of development, and Troup Electric Membership Corporation had extended its line for conveying electrical energy into said subdivision. Thereafter, and before commencement of the action in this case defendant further extended its lines a distance of 725 feet into the subdivision in question, installing in the process five poles in order to serve new members in an area where defendant had no lines prior to January 1, 1971. The plaintiff in the court below contended that, by virtue of the ratification and adoption by the people of the City of Columbus and the people of Muscogee County of the charter of Columbus, Georgia, the area wherein are located the lines of the defendant in question became an area included in the boundary of an incorporated city having a population in excess of 1,500 and that under the provisions of § 2 (8) of the Electric Membership Corporation Act, quoted above, defendant may not extend its lines in such area in any manner except to make a service drop not exceeding 300 feet from its lines as they existed prior to January 1, 1971. In the order appealed from, the trial court sustained this contention, and we have for decision the question of correctness of that ruling. *Held:*

1. It is a part of the public policy of this State to suppress monopolies and to encourage competition, and to this end restrictions on the right of any person, firm or corporation to engage in its business and to do business with those members of the public who choose to partake of its services are not favored. Const. of the State of Georgia, Art. IV, Sec. IV, Par. I (*Code Ann.* § 2-2701); *Code Ann.* § 20-504; *State v. Central of Ga. R. Co.,* 109 Ga. 716, 722 (35 SE 37, 48 LRA 351); *Blackmon v. Gulf Life Ins. Co.,* 179 Ga. 343, 350 (175 SE 798); *Coastal Butane Gas Co., v. Haupt,* 214 GA. 838 (108 SE2d 277).

2. Applying the foregoing principles to the issue in this

case, the provisions of § 2 (8) of the Electric Membership Corporation Act should be strictly construed, insofar as they impose limitations upon the right of such corporations to extend their lines and will not be construed to apply to any situation which was not clearly within the contemplation of the legislature at the time such law was enacted.

3. "Counties are subdivisions of the State government to which the State parcels its duty of governing the people. *Scales v. Ordinary,* 41 Ga. 225; *Butts County v. Jackson Bkg. Co.,* 129 Ga. 801 (60 SE 149; 15 LRA (NS) 567, 121 ASR 244). They are local, legal, political subdivisions of the State, created out of its territory, and are arms of the State, created, organized, and existing for civil and political purposes, particularly for the purpose of administering locally the general powers and policies of the State. 15 CJ 388 (§ 1) A." *Hines v. Etheridge,* 173 Ga. 870, 875 (162 SE 113). Muscogee County being a political arm of the State, in the absence of express authorization therefor, plainly and clearly stated in the constitutional amendment under which the enabling Act and the charter of Columbus, Georgia, were adopted, could not be abolished as a political subdivision of the State by mere legislative action.

4. On the other hand, municipalities are creatures of the legislature, and their existence may be established, altered, amended, enlarged or diminished, or utterly abolished by the legislature. *Churchill v. Walker,* 68 Ga. 681, 686; *City of Atlanta v. Gate City Gas Light Co.,* 71 Ga. 106, 123; *Hogg v. City of Rome,* 189 Ga. 298, 303 (6 SE2d 48).

5. Examination of the Muscogee County-City of Columbus Charter Commission constitutional amendment as proposed by the legislature, and ratified by the people of Muscogee County, clearly shows that it was not the intention of the framers thereof, nor of the people who ratified it, to authorize the abolition of Muscogee County as a political arm of the State, because it refers throughout to the "proposed county-wide government charter"; it

expressly forbids any action affecting the status of any incorporated municipality located within Muscogee County other than the City of Columbus or changing the status or relationship that such other incorporated municipalities bear to "Muscogee County"; it expressly forbids the abolition of the Muscogee County School District or the transfer of any of its powers, duties or obligations to the county-wide government; and, it forbids the abolition of the office of Sheriff of Muscogee County, or the transfer of any of his powers or duties to the county-wide government. Ga. L. 1968, pp. 1508, 1513.

6. A careful reading of the Charter of Columbus, Georgia (Ga. L. 1971, Ex. Sess., p. 2007, et seq.) shows that the governmental entity thereby created, while possessing many of the attributes of a city, and being granted municipal powers as extensive as any city, nevertheless also has the powers and attributes of a county in that it retains a sheriff, a court of ordinary, a superior court and many other county-like departments which function in areas not normally associated with municipalities. Under the provisions of § 9-107 of the charter, the governments of both Muscogee County and the City of Columbus, as it formerly existed, are abolished. However, abolition of the forms of government or of the governmental units of the county and the substitution therefor of a new and different form of government or governmental unit does not amount to the abolition of the county itself. The charter of Columbus, Georgia, studiously avoids designating the new political entity as a city, town or village. This court will not declare that to be a city, town or village, which the legislature has not seen fit to designate as such. *Heard v. State,* 113 Ga. 444, 445 (39 SE 118); *City of Smithville v. Dispensary Commrs. of Lee County,* 125 Ga. 559 (54 SE 539). Therefore, we hold that Columbus, Georgia, is nothing more than a new form of city-county government co-extensive with the limits of Muscogee County, which still exists, and that though it possesses

by virtue of its charter, broad municipal powers it is not such a city, town or village as was contemplated by the legislature in enacting § 2 (8) of the Electric Membership Corporation Act.

7. It follows, therefore, that Troup Electric Membership Corporation has non-exclusive rights to furnish electricity to its members in that portion of Columbus, Georgia, and Muscogee County, lying outside the limits of the former City of Columbus as they existed on December 31, 1970, and cannot be restricted in the extension of its lines in the area in question in this case because such lines are not now included within the limits of any incorporated or unincorporated city, town or village as those terms are used in § 2 (8) of the Electric Membership Corporation Act. *Code Ann.* § 34B-102 (8). The trial court erred in rendering the judgment and order appealed from.

*Judgment reversed. All the Justices concur.*
ARGUED MARCH 15, 1972—DECIDED JUNE 28, 1972—
REHEARING DENIED JULY 13, 1972.

Injunction. Troup Superior Court. Before Judge Knight.

*Tisinger & Tisinger, Richard G. Tisinger,* for appellant.

*Richter & Birdsong, Kelly, Champion & Henson, Forrest L. Champion, Jr.,* for appellee.

*James C. Brim, Jr., Donald T. Robinson, Lennie F. Davis, E. H. Polleys, Jr.,* amicus curiae.